IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:19CV934 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $7,400.00 in U.S. CURRENCY, | : | |
| | : | |
| and | : | |
| | : | |
| 2016 FORD F-150, | : | |
| VIN 1FTEW1EP4GFB92711, | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES the Plaintiff, the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1.     This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the aforesaid defendant U.S. Currency which was furnished or intended to be furnished in exchange for a controlled substance or represents proceeds traceable to such an exchange.

2.     This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant U.S. Currency which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense.

1

3. This action is also brought to enforce the provisions of 21 U.S.C. § 881(a)(4) for the forfeiture of the defendant vehicle, which was used or intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or other property described in 21 U.S.C. § 881(a)(1), (2), or (9).

4. The defendant properties are $7,400.00 in U.S. Currency and a white 2016 Ford F-150 truck, VIN 1FTEW1EP4GFB92711, which were seized on April 10, 2019, in Durham, North Carolina, and are currently in the custody of the United States Marshals Service.

5. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant properties were seized while located within in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

7. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the Plaintiff will execute upon the properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

8.    The facts and circumstances supporting the seizure and forfeiture of the defendant properties are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant properties; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant properties be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 11th day of September, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney

 */s/* Nathan L. Strup
Nathan L. Strup, Mo. Bar No. 60287
Assistant U.S. Attorney
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
(336) 333-5351/nathan.strup@usdoj.gov

3

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Kyle D. York
Task Force Officer
Drug Enforcement Administration

## DECLARATION

I, Kyle D. York, a Task Force Officer with the Drug Enforcement Administration (DEA), hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1.     I have been a duly deputized Task Force Officer for DEA since 2002, and currently assigned to the Raleigh Resident Office. I have been a sworn Police Officer with the Durham Police Department (DPD) since 1995. Since 2001, I have been a Detective in DPD's Special Operations Division. My responsibilities as a Task Force Officer include investigating narcotics traffickers in and around the City of Durham, North Carolina, and otherwise investigating criminal violations of the Federal Controlled Substance Act and related offenses. I have been involved in hundreds of drug investigations and cases at local, state, and federal levels. Because of my training and knowledge obtained through my investigative efforts, I have gained significant knowledge in the field of drug law enforcement. I have learned the techniques and methods utilized by drug traffickers in negotiating, procuring, packaging, financing, and distributing illegal drugs. I am familiar with the methods used by drug traffickers to maintain records manufactured from the sale of illegal controlled substances and the method in which they launder, and conceal the proceeds from the sale of illegal controlled substances.

GOVERNMENT
EXHIBIT
A
_____

2.    The facts set forth in this declaration are based on my personal knowledge and experience, and information provided by other law enforcement officers. This declaration does not set forth all facts known to me or other law enforcement officer concerning the investigation described below.

3.    Based on the facts set forth below, there is probable cause to believe that $7,400.00 in U.S. Currency and a white 2016 Ford F-150 truck, VIN 1FTEW1EP4GFB92711, seized on April 10, 2019, are subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

4.    In August 2018, DPD Vice Unit investigators received information from a certain individual, who is not named herein but is referred to "CI," about trafficking of cocaine and heroin in Durham, North Carolina. CI admitted to purchasing cocaine on multiple occasions from a certain male individual who was known as the "brother" of a different male individual known as "Pete." As discussed below, DPD Vice Unit investigators subsequently identified Frederick Earl SMITH as the individual known as "Pete" and Philip Eugene BOYD as the "brother" of "Pete."

5.    CI stated to DPD Vice Unit Investigators Franklin and Craig that during each drug deal CI would contact SMITH and place an order for cocaine. CI stated that SMITH would then contact BOYD, who CI understood to be the source of the drugs. SMITH would then give CI a predetermined meeting location. After CI arrived at the location, CI usually would wait briefly before BOYD arrived driving a particular white Ford F-150 truck or a particular Lexus

2

sedan. SMITH acted as the go-between by delivering the narcotics to CI and taking the money to BOYD. CI saw BOYD at several of these drug deals. CI believed SMITH had recently been the target of a search warrant execution at his mother's apartment in the Mutual Heights neighborhood of Durham, North Carolina, but that law enforcement found no evidence during the search.

6. DPD Vice Narcotics Unit Investigator Franklin then corroborated some of the information provided by CI. Investigator Franklin spoke with Investigator Douglass about a search conducted in July 2018 at the Mutual Heights apartment complex in Durham. Investigator Douglass stated that he conducted the search after making controlled purchases of crack cocaine from a male known as "Pete." Investigator Douglass stated that he identified SMITH as "Pete."

7. In August 2018, Investigator Franklin identified BOYD as the individual known as SMITH's "brother." Investigator Franklin determined that BOYD resides at a home that is located on Lucknam Lane, Durham, North Carolina 27707, and that is referred to herein as "the residence". Investigator Franklin also determined that since 2008, BOYD has been married to Marietta Poole Boyd (M. BOYD), who also resides at the residence. Investigator Franklin further determined M. BOYD is the sole owner of the residence.

8. In early October 2018, Investigator Franklin observed a white 2016 Ford F-150 truck, VIN 1FTEW1EP4GFB92711, in the driveway at the residence. M. BOYD is the registered owner of the white Ford F-150 truck.

3

9.    On or about October 21, 2018, Investigator Franklin arranged for CI to purchase cocaine from SMITH and BOYD. CI then contacted SMITH to arrange the drug deal. SMITH agreed and gave CI a predetermined meeting location. Investigator Franklin searched CI and CI's vehicle for U.S. Currency and any controlled substances and found none. CI was provided U.S. Currency from the DPD's Organized Crime Division. CI remained under surveillance by DPD investigators throughout the entirety of the drug deal. Shortly after CI arrived at the predetermined meeting location, a late model white Ford F-150 truck arrived and parked near CI. SMITH exited the passenger side of the truck and sold drugs to CI in exchange for U.S. Currency. After the drug deal, SMITH was observed giving the U.S. Currency to the driver of the white Ford F-150 truck, who was identified as BOYD. CI returned directly to investigators and provided investigators with a clear plastic baggie containing a white rock substance. CI stated that the baggie containing the white rock substance was sold to him by SMITH and that the substance appeared to be cocaine. Immediately following the drug deal, CI and CI's vehicle were searched and found to be free of any U.S. Currency or controlled substances. The white rock substance field-tested positive for cocaine.

10.    Investigator Franklin concluded the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, used to conduct the drug deal described above was the same white Ford F-150 truck seen in the driveway at the residence.

4

11.     On October 31, 2018, Investigator Franklin applied for and was granted a tracking device order for the white Ford F150 truck, VIN 1FTEW1EP4GFB92711. After the tracking device was placed onto the truck, it transmitted information for approximately ten (10) days before the device failed to register and transmit a location. The tracking device was recovered shortly thereafter.

12.     After removing the tracking device, investigators continued the investigation into BOYD and SMITH. Furthermore, investigators confirmed that BOYD continued to operate the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711.

13.     On March 8, 2019, investigators contacted CI. CI was instructed to make contact with SMITH and arrange a drug transaction for nine (9) ounces of cocaine. CI then contacted SMITH by telephone and confirmed that SMITH and BOYD had enough cocaine to supply nine (9) ounces and agreed upon a price of $8,600.00. SMITH informed CI that CI would have to wait about two (2) hours for BOYD to pick SMITH up from work so that the transaction could take place. Given that SMITH acts as the point of contact between CI and BOYD, SMITH had to wait until SMITH's lunch break to be able to broker the deal.

14.     Due to circumstances outside of the investigators' control, the investigators cancelled the drug transaction for the day. Investigators fully believed that had they not cancelled, the transaction would have taken place on March 8, 2019.

5

15.     On March 12, 2019, Investigator Franklin applied for a second tracking order for the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711. The GPS tracking device was placed on March 15, 2019, and successfully sent GPS tracking data to investigators every few hours. The GPS tracking device records a vehicle's movements and the date and time that the vehicle leaves and arrives at address points. The GPS tracking device also provides an approximation of how long the vehicle stops at specific address points. The GPS tracking device then transmits all of that data to investigators.

16.     Upon reviewing the data that the GPS tracking device transmitted, investigators found that the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, frequently made short stops at locations throughout Durham, North Carolina, on most days. Many of the short stops would be at gas stations throughout the city and in areas known to investigators as high crime and high narcotics areas. Investigators found that the truck would, on numerous occasions, return to the residence between the stops.

17.     On numerous occasions, the GPS tracking device showed the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, leaving the residence to destinations where the truck was stationary for only a few moments only to return to the residence for a few minutes and then leave again.

18.     On April 5, 2019, DPD Vice Narcotics Unit investigators conducted surveillance on BOYD throughout the day to observe BOYD and the multiple quick stops BOYD would make to various locations within Durham, North

6

Carolina. At approximately 9:30 a.m., investigators observed a green Oldsmobile sedan parked in front of the residence. A male was sitting inside the vehicle. The white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, was idling in the driveway. Investigators determined that the Oldsmobile sedan was registered to a certain individual who is not named herein, but is referred to as "S.R." S.R. had prior drug charges, and had once been incarcerated for murder in Durham, North Carolina. The Oldsmobile sedan soon left the residence and the white Ford F-150 truck followed. Investigators identified BOYD as the driver of the truck at that time. Throughout the day, BOYD was under surveillance and seen making multiple quick stops at various residences, businesses, and gas stations. Investigators identified several individuals in the vicinity of the quick stops as individuals known to have criminal drug history.

19. Because of the close surveillance conducted on April 5, 2019, investigators corroborated much of the information provided to them by CI, which further lead investigators to determine that CI was credible and reliable. Investigators corroborated the GPS tracking data collected since March 15, 2019, and confirm that much of the "short stay traffic" appeared drug-related.

20. On April 8, 2019, Investigator Franklin made contact with CI. CI informed Investigator Franklin that CI had spoken to SMITH the previous day. SMITH informed CI that SMITH and BOYD had enough product to conduct a nine (9) ounce cocaine deal. CI informed SMITH that CI would call him again in a few days to arrange to conduct the transaction.

7

21. On April 9, 2019, Investigator Franklin contacted CI. CI informed Investigator Franklin that CI had just spoken with SMITH, who confirmed to CI that SMITH and BOYD would be able to conduct a transaction for nine (9) ounces of cocaine on April 10, 2019. SMITH informed CI that the price would be $8,700.00. CI informed SMITH that CI would call SMITH the following day to set up the drug deal.

22. On the morning on April 10, 2019, Investigator Franklin drove past the residence. Investigator Franklin found that the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, was parked in the driveway and a black Lexus sedan was parked on the street in front of the residence. An anticipatory search warrant was prepared, and granted by Durham County Superior Court Judge J. Dunlow to search the residence.

23. Investigator Franklin requested that Investigator Thrall of DPD Vice Narcotics Unit conduct close surveillance of the residence. Investigator Thrall arrived at the residence a short while later and then informed Investigator Franklin that he was in a position where he could see vehicles coming and going from the residence.

24. At approximately 9:30 A.M. on April 10, 2019, Investigator Franklin spoke with CI. CI informed Investigator Franklin that CI had spoken with SMITH and SMITH confirmed that the drug transaction would take place after lunch that day.

8

25. Prior to CI meeting with BOYD, Investigator Franklin and Investigator Craig searched CI and CI's vehicle. CI informed investigators that CI had spoken with SMITH again and the transaction would be at an Extended Stay hotel located in Durham, North Carolina. Investigators provided CI with $8,700.00 in U.S. Currency from the DPD's Organized Crime Division.

26. At approximately 1:00 P.M. on April 10, 2019, CI made a recorded telephone call to SMITH. During the call, SMITH confirmed that everything was still on and told CI to call SMITH when CI was about five (5) minutes away from their meeting place. Investigators then provided CI with an audio/visual monitoring device and instructed CI to keep it on his/her person throughout the entirety of the transaction.

27. Shortly thereafter, CI again called SMITH who instructed CI to pull around the back of the Extended Stay hotel. While on the way to the transaction, SMITH called CI and told CI to give him about five (5) minutes so SMITH could see how close BOYD was.

28. At approximately 1:20 P.M., BOYD left the residence wearing a yellow baseball cap and drove away in the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711. Investigators were then notified that the GPS tracking device on the white Ford F-150 truck had activated and was in motion. Investigators learned from the tracking data that BOYD drove to the 1100 Block of Moreland Avenue, Durham, North Carolina (approximate GPS location) for approximately forty (40) seconds before returning to the residence. The truck

9

remained parked at the residence for approximately five (5) minutes before BOYD again left the residence in the truck.

29.     While investigators continued to monitor the GPS tracking data, SMITH called CI and told CI to meet SMITH at the Mobil gas station located a short distance from the Extended Stay hotel. Investigators adjusted their position so that they had a clear view of the transaction as it took place.

30.     Shortly after CI arrived at the Mobil gas station, SMITH entered the passenger area of CI's vehicle. Upon entering the vehicle, SMITH spoke with CI and discussed the price of the cocaine and the other people that SMITH had conducted transactions with such as "HOG" and "ICE."

31.     As SMITH and CI were waiting for BOYD to arrive, investigators continued to monitor the GPS tracking information. Each update showed that BOYD was heading towards the Mobil gas station in the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711. Investigator Franklin along with other investigators parked near the intersection where they could view the Mobil gas station.

32.     At approximately 2:06 P.M., investigators received a notification that the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, was approaching the Mobil gas station. Moments later, investigators witnessed the white Ford F-150 truck approach and could see that BOYD driving and wearing a yellow baseball cap. BOYD turned into the Mobil gas station and stopped at the gas pumps near CI's vehicle.

10

33.     Upon arrival of BOYD in the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, SMITH exited CI's vehicle and got into the passenger side of the truck. Moments later, SMITH exited the passenger side of the truck and returned to the passenger side of CI's vehicle. Shortly after re-approaching CI's vehicle, SMITH walked away from CI's vehicle, back in the direction of the Extended Stay hotel. BOYD, in the white Ford F-150 truck pulled out of the Mobil gas station parking lot and turned left onto NC-54 heading west. CI's vehicle also pulled out of the Mobil gas station parking lot and began heading to a predetermined location to meet investigators.

34.     Investigators determined that the criteria for the anticipatory search warrant for the residence had been met and prepared to execute the warrant after BOYD was taken into custody.

35.     After leaving the Mobil gas station parking lot, BOYD headed directly back to the residence. Members of the DPD Selective Enforcement Unit were already in position at the residence, arrested BOYD, and took him into custody upon his arrival at the residence.

36.     Investigator Franklin, along with other investigators, met CI at the predetermined meeting location after the drug deal was completed. A gray plastic bag and the audio/visual monitoring device was recovered from CI. Inside the bag, investigators found nine (9) individually wrapped clear plastic baggies containing a white powdery substance. Investigators later found that the nine (9) individually wrapped baggies of white powder field-tested positive for the

11

presence of cocaine and had a combined total weight of 259.2 grams. Investigators also found a Walmart receipt inside the gray plastic bag. CI stated to investigators that CI had provided the $8,700.00 in U.S. Currency to SMITH. Investigators spoke with Loss Prevention at the Walmart store identified on the receipt and confirmed through video and pictures that BOYD had shopped at Walmart earlier in the day.

37.     After debriefing CI, Investigator Franklin proceeded to the residence. Investigator Franklin assisted with the search of the residence and recovered the GPS tracking device and the $8,700.00 in U.S. Currency provided by DPD from the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711.

38.     After the execution of the search warrant, BOYD was transported to DPD headquarters.

39.     The white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, and a Lexus sedan were seized and transported to DPD Headquarters. The Lexus sedan was later returned to M. BOYD.

40.     Investigators seized the following items and property from the residence:

a.     A total of 408.4 grams of white powdery substance located in the refrigerator, the pantry, and above the microwave. The substance field-tested positive for cocaine.

b.     A total amount of $108,871.00 in U.S. Currency, including $7,700.00 in U.S. Currency found in a coat pocket located in an upstairs bedroom

12

of the residence, and other amounts of U.S. Currency found on BOYD's person, inside a plastic bag on a nightstand, and in the drawer of the nightstand, and a large amount of U.S. Currency in vacuum-sealed bags in a cardboard box located in the garage.

     c.    A total of twenty-five (25) large 5-gallon white plastic buckets each of which contained marijuana. The white buckets were located in the garage, on top of the washing machine inside the residence, under the dining room table, in a small hallway closet, and in a bathtub on the second floor of the residence. Smaller amounts of marijuana were found in the pantry and in the refrigerator. The marijuana seized had a combined total weight of one hundred seventy-eight (178) pounds.

     d.    A currency counter found in a small downstairs hallway closet.

     e.    Assorted items commonly used by drug traffickers, including a large vacuum sealer, vacuum bags, a small digital scale, a large digital scale, opened vacuum sealed baggies, a large shrink wrapping roll, small clear plastic sandwich baggies, and a razor blade.

     41.    BOYD was read his Miranda rights, which he waived and agreed to speak with investigators.

     42.    BOYD was charged with four counts of conspiring to sell or deliver cocaine, four counts of maintaining a vehicle or dwelling for the sale of a controlled substance, three counts of possession with the intent to sell or deliver cocaine, four counts of sale or delivery of cocaine, six counts of trafficking in

13

cocaine, one count of trafficking in marijuana, one count of possession with the intent to sell or deliver marijuana, four counts of conspiring to traffic in cocaine, and one count of possession with the intent to sell or deliver a controlled substance within 1,000 feet of a school. BOYD was transported to the Durham County Magistrate's Office where probable cause was found for his charges. BOYD received a $5,000,000.00 secured bond.

43.     A review of BOYD's prior criminal drug history includes convictions of possession with intent to manufacture, sell, and distribute a Schedule II controlled substance and felony possession of a Schedule II controlled substance in 1989, resulting in a prison sentence; and felony possession of a Schedule VI Controlled substance and possession with intent to sell or deliver marijuana in 2010, resulting in a prison sentence. BOYD has been charged in separate instances with trafficking cocaine; trafficking marijuana; possession of marijuana; possession with intent to manufacture, sell, and distribute of marijuana; and possession with intent to manufacture, sell, and distribute cocaine.

44.     BOYD's prior history also shows that on December 27, 1994, BOYD was detained by the Dallas/Ft. Worth Airport Department of Public Safety while in possession of $29,954.00 U.S. Currency derived from drug proceeds. The DEA forfeited the $29,954.00 in U.S. Currency administratively.

45.     BOYD has no verifiable employment.

46.     On April 17, 2019, Investigator Franklin prepared and was granted arrest warrants for SMITH. SMITH was charged with four counts of trafficking

14

cocaine, four counts of conspiring to traffic cocaine, two counts of possession with the intent to sell or deliver cocaine, four counts of the sale or delivery of cocaine, and four counts of conspiring to sell or deliver cocaine.

47.    The $108,871.00 in U.S. Currency was converted into a check from Durham Finance Department, Accounting Services Division, and sent to the United States Marshals Service in Raleigh, North Carolina, where it was deposited into the Seized Asset Deposit Fund.

48.    DEA adopted the seizure of the $108,871.00 in U.S. Currency and the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711, and began administrative forfeiture proceedings. On June 13, 2019, M. BOYD filed an administrative claim for $7,400.00 of the $108,871.00 in U.S. Currency and the white Ford F-150 truck, VIN 1FTEW1EP4GFB92711. In her administrative claim, M. BOYD claimed legal ownership of the truck and $7,400.00 of U.S. Currency "that [was] seized from [her] coat pocket in the bedroom, separate and apart from other monies sized, which [she] makes no claim to." The administrative forfeiture process for $7,400.00 in U.S. Currency and the Ford F-150, VIN 1FTEW1EP4GFB92711 was terminated, and the seizure referred to the United States Attorney's Office for judicial forfeiture.

49.    Based on the foregoing, there is probable cause to believe that $7,400.00 in U.S. Currency was furnished, or intended to be furnished, in exchange for a controlled substance or represents proceeds traceable to such an

15

exchange, and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

50.    Based on the foregoing, there is probable cause to believe that the white 2016 Ford F-150 truck, VIN 1FTEW1EP4GFB92711, was used, or intended for use, to transport or facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or other property described in 21 U.S.C. § 881(a)(1), (2), or (9), and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4).

This the 11th day of September, 2019.

_____
Kyle D. York
Task Force Officer
U.S. Drug Enforcement Administration

16